# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAUN ADAMS, | : | |
| Plaintiff, | : | |
| v. | : | No. 4:15-CV-1236 |
| CORRECTIONAL OFFICER, CORNELIUS, ET AL., | : | (Judge Brann) |
| Defendants. | : | |

## MEMORANDUM OPINION

### MARCH 19, 2018

**I.  BACKGROUND**

Shaun Adams, an inmate presently confined at the State Correctional Institution, Coal Township, Pennsylvania (SCI- Coal Twp.) initiated this *pro se* civil rights action. Named as Defendants are Correctional Officers Walter Cornelius and Joshua Clark, both of whom are employed at Plaintiff's prior place confinement, the Smithfield State Correctional Institution, (SCI-Smithfield). A second amended complaint (Doc. 45) was previously accepted by the Court.

Plaintiff states that on June 21, 2013 he was housed in the Restricted Housing Unit (RHU) of SCI-Smithfield. After being escorted back to his cell from the shower area on said date, the Plaintiff alleges that he "had to be taken down to the ground" at his cell door by the two Defendants. Doc. 1, ¶ 4. Adams

-1-

asserts that Correctional Officer Cornelius was allegedly holding one end of a tether which was attached to Adams. It is alleged that Cornelius pulled on the tether forcing Plaintiff's arms through the wicket of his cell door "leaving permanent scars on his right forearm." *Id.*, ¶ 7. Adams next avers that after Defendant Clark uncuffed one of Plaintiff's wrists a struggle ensued during which Plaintiff pulled the tether and handcuffs towards his cell door. Clark purportedly responded by stabbing Adams in the left hand three times with an RHU set of eight inch keys. Following the incident, Nurse Eberling was called to Plaintiff's cell and applied sutures and gauze to his wounds. Although the second amended complaint admits that "some force was needed to secure Adams in his cell", Plaintiff concludes that the actions of the Defendants were excessive and violated his rights under the Eighth Amendment. *Id.* at ¶ 19.

Following the incident, Plaintiff's property was taken from his cell and he was left with only bed linen and a jumpsuit by unidentified officials. The following day Plaintiff passed out from not eating. Adams, who indicates that he suffers from mental illness, was then placed by unnamed staff in a psychiatric observation cell (POC) for purposes of protection. *See id.* at ¶ 33.

Presently pending is Defendants' motion seeking entry of summary judgment. *See* Doc. 56. The partially opposed motion is now ripe for consideration.

## II. DISCUSSION

Defendants claim entitlement to summary judgment on the grounds that: (1) Correctional Officer Cornelius was not personally involved in the alleged constitutional misconduct; (2) the amount of force used was constitutionally acceptable as it was only that which was necessary to subdue the Plaintiff and restore order; and (3) Defendants are entitled to qualified immunity.

### A. Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.,* 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir.

1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex,* 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### B. Personal Involvement

Defendants initially contend that Correctional Officer Cornelius is entitled to entry of summary judgment on the basis of lack of personal involvement. *See* Doc. 58, p. 9. It is asserted that the undisputed record establishes that Cornelius' only involvement in the alleged altercation was when Adams pulled on a tether and this

Defendant pulled back. It is undisputed that this action was constitutionally acceptable. Adams' opposing brief does not address this argument.

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

In his deposition testimony, Plaintiff indicates for the first time that in addition to pulling on the tether, Cornelius also struck Adams' right forearm with a closed fist four to six times in an effort to force the prisoner to let go off Clark's shirt. Adams further testified that his assertion that the two Defendants took him to the floor outside his cell was erroneous, apparently the result of Plaintiff confusing some aspects of the June 21, 2013 event with another unrelated incident.

With respect to the issue of Defendant Cornelius' liability, Adams' deposition testimony states "Like, Cornelius, I don't know why he's a Defendant in this case because he wasn't the one who assaulted me." Doc. 58-1, p. 13. Plaintiff adds "[a]nd I'm not claiming that he [Cornelius] was the one who assaulted me." *Id*. A subsequent portion of Adams' testimony admits that Cornelius "was right in pulling me back, " and that striking him on the forearm was "reasonable" and that this constituted an appropriate use of force. *Id*. at pp. 36 & 65.

Based upon the repeated admissions by the Plaintiff during his deposition testimony that Cornelius did not engage in any acts of constitutional misconduct, the unopposed argument seeking entry of summary judgment in favor of Correctional Officer Cornelius on the basis of lack of personal involvement will be granted.

## C. Excessive Force

Defendants next acknowledge that based on the Plaintiff's deposition testimony there are no disputed facts for purposes of this motion  They argue that since the force exercised by the Defendants was only that which was reasonable to subdue the Plaintiff and restore order, entry of summary judgment is appropriate with respect to the claim of excessive force.  *See* Doc. 58, p.12.

A correctional officer's use of force constitutes cruel and unusual punishment if it consists of "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injury.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).   The degree or lack of injury is still a relevant factor in the determination of the excessiveness of the force used.  *See Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).  However, it would be erroneous to narrow the inquiry to the absence of serious injuries.  *See Smith v. Mensinger*, 293 F.3d 641, 649  (3d. Cir.  2002).

Courts must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm."  *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir.  2000); *Brooks*, 204 F.3d at 106 (even a *de minimis* use of force, if repugnant to the conscience of mankind, may be constitutionally significant).  The United States Court of Appeals for the Third

Circuit has established the appropriate standard of review:

> Resolution of an Eighth Amendment claim therefore 'mandate[s] an inquiry into a prison official's state of mind.' Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. 'What is necessary to establish an "unnecessary and wanton infliction of pain. . ." varies according to the nature of the alleged constitutional violation.'

*Fuentes*, 206 F.3d at 344.

The pertinent inquiry is whether the actions of the prison officials "taken contextually, do not comport with 'contemporary standards of decency.'" *Concepcion v. Morton*, 125 F. Supp. 2d 111, 123 (D.N.J. 2000). *See also Wilson v. Horn*, 971 F. Supp. 943, 948 (E.D. Pa. 1997)(a plaintiff must establish that the force was applied maliciously and sadistically, instead of in good faith).

In his deposition testimony, Adams states that he was confined in the RHU for approximately a year before the incident at issue. Plaintiff admits that he had previously assaulted a correctional officer by losing his cool and head-butting the officer as he was exiting a recreation cage. *See* Doc. 58-1, p. 12. He also acknowledges that he had prior negative interactions with Defendant Clark.

Plaintiff clarifies, however, that on the day of the incident he was not taken to the floor by the Defendants and he did not assault Clark. *See id.* at pp. 18-19. Adams explains that the inclusion of that allegation in his second amended complaint was an honest mistake and he partially confused the June 21, 2013 event with another incident.

Plaintiff elaborates that on June 21, 2013, after being placed back in his cell with the door partially open, he and Clark had a verbal exchange. Plaintiff became angry and made a jumping motion at Clark and the officer pushed him back into his cell "which was understandable." *Id*. at p. 22. Adams describes the jumping motion as making it look like he was going to rush Clark.

Once the cell door was completely shut and the tether was placed through the wicket with one end still attached to Adams and the other end held by Officer Cornelius, Plaintiff admits that he spun around and "tried to pull the tether and handcuffs into my cell." *Id*. at p. 27. Officer Cornelius pulled back, conduct which Adams admits was according to policy and understandable.

Clark subsequently uncuffed Plaintiff's left hand, at which point Plaintiff states "I spun around and grabbed Clark, grabbed him by his shirt with my right hand." *Id*. at p. 32. Adams admits the he tried to pull Clark by the shirt towards the cell door because he was mad. Adams adds that he ignored verbal orders from the officers to cease his actions; he was also cursing and spitting. It was at this

-9-

point Cornelius began hitting Plaintiff on his right arm so that Adams would release Clark.

Adams states that he next grabbed Clark's shirt with his left hand and again began pulling the officer to the door while both Defendants were telling him to stop. Clark then stabbed Adams three times with the keys. After the third stab, Plaintiff released Clark and there was no further physical contact. Plaintiff asserts that his wounds required medical attention which was provided. Adams clarifies that contrary to his second amended complaint "the keys didn't go out the palm of my hand." *Id*. at p. 51. Plaintiff concludes that he believes that Clark engaged in an excessive use of force because stabbing him with the keys "was a little bit going too far." *Id*. at p. 103.

As noted earlier, Defendants maintain that that the version of events described by Plaintiff's deposition testimony is accurate for purposes of this motion and as such this Court will conclude for the purpose of deciding this motion that there are no disputed facts regarding the June 21, 2013 incident.

Clearly, this case does not involve a premeditated use of force by correctional staff. Rather, it is undisputed that the two escorting officers reacted in a defensive manner when Plaintiff initiated aggressive behavior towards Defendant Clark. It is again noted that Plaintiff acknowledges that the use of physical force by one of the Defendant, Correctional Officer Cornelius, was reasonable and

within acceptable constitutional parameters.

With respect to Correctional Officer Clark, it is undisputed that he did not initiate any physical confrontation with Adams. Plaintiff also asserts that Clark acted in a reasonable manner by shoving him after he made an initial aggressive move towards the officer. Adams concedes that he thereafter escalated the incident by grabbing Clark by the shirt and pulling the officer towards the cell door. The undisputed facts establish that Clark had a set of keys in his hand when Adams grabbed him and he stabbed Adams in the hand three times. Once Adams released his grip, the stabbing ceased and no further use of force was employed.

An application of *Whitley* and *Fuentes* to these undisputed facts clearly undermines any determination that this was a malicious and sadistic use of force by corrections staff. Adams admits that he suffers from mental health issues and has a prior history of assaultive behavior against correctional staff. It is also undisputed that Adams continued his attack despite verbal orders to cease his misconduct as well as the use of physical measures by Correctional Officer Cornelius.

A correctional officer has the right to use force to ward off an assault by an inmate. *See Biauce v. Jones*, No. 08-4841, 2010 WL 2994214 *6 (E.D. Pa. July 27, 2010)(biting an assailant inmate's finger as a means of self-defense was justifiable). First, it is clear that based upon the circumstances of this case it was reasonable for Clark to perceive that he had a need to employ force in order to

defend himself from further physical attack by Adams. This inmate had already ignored verbal orders and physical contact by Officer Cornelius to cease his aggressive behavior. Second, it is undisputed that Clark only employed that force which was necessary to compel Adams to release his grip on the officer. Third, the correctional officer already had a set of keys in his hand at the time he was assaulted by Adams. As such, it is evident that Clark simply used the set of keys because they were readily available in order to protect his safety during an emergency situation. The use of force ceased once the Plaintiff released his grip. This determination is bolstered by Adams' own deposition testimony where he admits that once he released his grip on Correctional Officer Clark no more force was used against him.

Based upon an application of the well settled *Fuentes* and *Whitley* factors to the undisputed facts, the limited use of force by Clark was only employed as a measure of last resort to protect his safety without any malicious or sadistic intent to inflict injury. As such, entry of summary judgment in favor of the Defendants with respect to the allegation of excessive force is appropriate.

### D. Qualified Immunity

Defendants further argue that if the question of whether an Eighth Amendment violation occurred is a close call, entry of summary judgment is still appropriate because the Defendants are shielded by qualified immunity. *See* Doc.

58, p.17. Qualified immunity is an affirmative defense which must be pleaded by the defendant official. *Verney v. Pennsylvania Turnpike Comm'n*, 881 F. Supp. 145, 149 (M.D. Pa. 1995). In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court of the United States held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *Sherwood v. Mulvihill*, 113 F.3d 396, 398-99 (3d Cir. 1997); *Showers v. Spangler*, 957 F. Supp. 584, 589 (M.D. Pa. 1997).

It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." *People of Three Mile Island v. Nuclear Regulatory Commissioners*, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)).

The Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), established a two part test for analyzing qualified immunity claims. *See also Curley v. Klem*, 298 F.3d 271 (3d Cir. 2002); *Bennett v. Murphy*, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." *Bennett*, 274 F.3d at 136. The second prong requires a determination as to whether the

constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

Here, it would have been clear to a reasonable person that warding off an attack by a hostile inmate by striking out with an object already in the person's hand only until such time as the attacker backed off was not unlawful conduct. Accordingly, this Court agrees that Defendant Clark would also be entitled to qualified immunity.

## III. CONCLUSION

For the reasons set forth above, summary judgment is granted in favor of the Defendants. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge